*December,* 1824.

### Bennett *against* Hubbard and Wilson.

By articles of agreement, B to furnish H and W with $1000, to be applied to the purchase of lands of the U. S. H to sell the lands at discretion, and to pay B two-thirds of profits from sale and retain one-third, returning to B in every instance the money advanced ; all the lands unsold to be divided by ballot between the parties, (at the instance of either giving the other two months' notice) two-thirds to B, and one-third to H and W 1, H & W bound to return the whole money advanced.   2, Parol evidence to explain the written agreement not admissible.

*SAMUEL BENNETT* brought an action of assumpsit against *David Hubbard* and *Marlin Wilson* in the Circuit Court of *Lawrence* County ; on the trial the plaintiff gave in evidence a paper signed by the parties, the material parts of which are as follow : " The said *Bennett* binds himself to " furnish the said Firm of *Hubbard* and *Wilson* with the sum " of one thousand dollars, to be appropriated to the pur- " chase of lands from the United States, and dispose of the " same in the following manner, viz. : the lands to be pur- " chased in the name of *David Hubbard,* and sold by him " at discretion, he paying to the said *Samuel Bennett* two- " thirds of the profit made by such sales, and reserving for " his services the remaining third, returning to the said *Sa-* " *muel Bennett* in every instance the money advanced.

" But if any lands should remain unsold, all lands that
" remain unsold shall, at the instance of either party by giv-
" ing the other two months' previous notice, be divided by
" ballot between them, two-thirds to the aforesaid *Samuel*
" *Bennett* and the remaining third to the said Firm of *Hub-*
" *bard* and *Wilson.* The said Firm of *Hubbard* and *Wil-*
" *son* bind themselves on their part to attend diligently to
" the examining of all lands previous to the sales in which
" they may make purchases, and to give to the aforesaid
" *Samuel Bennett* the like mentioned interest in any and
" every tract of land by them or for them purchased, until
" the said funds, or as much more as they may receive,
" shall have been expended. The said Firm of *Hubbard*
" and *Wilson* shall return to the said *Bennett* a monthly list
" of the lands purchased by them. It is further understood
" that all lands sold by the said *Hubbard* shall be held by
" him to secure the final payment thereon." The plaintiff
on the trial also offered in evidence the deposition of *Wm.*
*B. Locke,* who was present at the execution of said written
agreement : in which deposition was the following question
by defendants : " Did you understand that by said agree-
" ment, if any land should remain unsold it should be divid-
" ed between the parties, one-third of which should belong
" to said Firm of *Hubbard* and *Wilson* for their services ?"
and the answer, " I did so understand ;" to the admission
of which question and answer as evidence, the plaintiff by
his Counsel objected ; but the Court decided that they were
admissible. The Court charged the Jury, that by the con-
struction and legal operation of said written agreement, the
plaintiff was entitled to have returned to him the money
advanced for the purchase of such lands as had been sold
by said *Hubbard,* but not entitled to a return of the money
advanced for the purchase of such as had not been so sold ;
and that, so far as the land had been divided between the
parties, the plaintiff was not entitled to have returned to
him the money advanced for the purchase of the part which
had been allotted to defendants. To all which the plaintiff
excepts, &c. On writ of Error to this Court, *Bennett* as-
signed the matter of the bill of Exceptions as Error.

Judge *Gayle* delivered the opinion of the majority of the
Court.

In this case it is material to enquire whether the evidence
objected to tended to establish a meaning and interpretation
of the argument different from what is warranted by the
sound rules of construction.

The agreement provides for a final settlement between

the parties, by a division of the profits from the sale of the lands, and by a division of the lands unsold. The terms of the instrument leave no doubt on the mind, that in case of a sale, the compensation of the defendants for their services was to be received entirely from the profits of the speculation ; but the parties agree that the lands unsold shall be divided between them, two-thirds to the plaintiff, and one-third to defendants. This part of the agreement, taken separately, would authorize the conclusion that one-third of the land was intended as a compensation to defendants. But immediately preceding this, (in the written articles,) it is expressly provided that in every instance the money advanced shall be returned. It seems very clear that a main object of the plaintiff was to secure, either in money or in land, the amount he was to advance. If the lands had been sold only at the price at which they were purchased, the defendants would have been bound to pay to the plaintiff the whole proceeds of the sale, reserving nothing for their compensation. But if one third of the unsold lands belonged to them as compensation for their services, they had the power, (and the strongest temptation to exercise it,) to defraud the plaintiff by refusing to sell any land until after division ; and in this way they would in effect receive one third of the money advanced, and all the profit which could be made on this third as invested. There can be no doubt that it was intended by the parties that failing to sell the land should not operate more to the injury of one than the other, and that the division should be made upon principles of equality. The construction contended for on the part of the defendants, would throw on the plaintiff the whole loss arising from failure to sell, and render it more beneficial to defendants not to sell than to make profitable sales.

In every point of view in which the case can be considered, it is the opinion of the majority of the Court that the evidence objected to was improperly admitted, and that the Circuit Court erred in the charge to the Jury.

Judge *Crenshaw*.—The agreement here provides for two events : the sale of the land, and for the division of the land that should remain unsold. The agreement first provides, that in every instance of a sale, after dividing the profits, the money advanced by *Bennett* for the purchase of the land should be refunded. It was clearly the intention of the parties, that if *Hubbard* should sell the whole of the lands *Bennett* should receive back the amount of money advanced, and also two-thirds of the profits. I understand that the words in the articles of agreement "returning to the

said *Samuel Bennett* the money advanced," refer to what immediately precedes it—the provision for the sale of the lands and division of the profits arising from such sales, and do not refer to that part of the agreement which relates to the lands which should remain unsold. In my opinion, it is contrary to the manifest intention of the parties, and to reason and justice, that the defendant should repay to the plaintiff the money advanced on every purchase. If this were the proper construction, and none of the lands had been sold, the plaintiff would be entitled to receive the $1000 which he had advanced, and also two-thirds of the land which had been purchased with that $1000. The parties supposed that all or some of the lands purchased might remain unsold ; in which event, instead of having the purchase money refunded, the plaintiff was to receive two-thirds of the lands in lieu of the money and also of the profits. It appears to me that this was evidently the intention of the parties, as to be collected from the second provision in the agreement. This agreement was a limited partnership, to the common stock of which the plaintiff contributed his money and the defendants their services ; the agreement shews the interest of each, the manner in which the business was to be conducted, and how it should be closed and settled. If all the lands should be sold, the capital advanced by the plaintiff would be at no hazard ; he would receive it back, together with his part of the profits. If any of the lands should remain unsold, as to these in lieu of his money advanced and profits he was to receive two-thirds of these lands and nothing more. There can be no question but that every agreement should be expounded by all *its* parts taken together, and that the intention of the parties ought to be collected from the face of the instrument ; but another rule equally sound is, that if the words or expressions used by the parties are susceptible of two meanings, we must give to them that which is most obvious, and which best comports with *reason and justice. By this* last rule, and not in violation of the first, I have endeavoured to interpret this agreement ; and if I have given to it the right construction, the Judge of the Circuit Court did not err. It was his duty to state to the Jury its legal effect and operation. The evidence objected to was not in explanation or contradiction of the agreement according to my construction. It was indeed unnecessary, and might have been rejected. But proving nothing more or less than what was already proved by the written contract, it could not mislead the Jury, and the verdict ought not on this account to be disturbed. I am

*DECEMBER, 1824.*

Bennett
v.
Hubbard and
Wilson.

DECEMBER, 1824. of opinion that the judgment of the Circuit Court should be
affirmed.

Bennett
v.
Hubbard and          The Chief Justice and Judge *Saffold* concurred with
Wilson.          Judge *Gayle*.   Judge *Ellis* having presided on the trial, and
Judge *Minor* having been of Counsel in the Circuit Court,
did not sit.

Judgment reversed and cause remanded.

*J. M. Taylor* for plaintiff.

*Coalter* for defendant in Error.